PHILLIP A. TALBERT
Acting United States Attorney
CHRISTINA McCALL
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile: (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | CASE NO.  2:19-CR-0188 KJM |
| Plaintiff, | UNITED STATES' SENTENCING MEMORANDUM |
| v. | DATE:     November 15, 2021 |
| DANIEL WAYNE BENNER, | TIME:     9:00 A.M. |
| Defendant. | COURT:  Hon. Kimberly J. Mueller |

## I.     **INTRODUCTION**

The United States respectfully submits its sentencing memorandum concerning Daniel Wayne Benner, who was previously convicted of oral copulation of a minor, and is now convicted of distribution of child pornography.  In this case, Benner was active on Kik Messenger, which he used to send and receive visual depictions of children being sexually abused or exploited.  Consistent with the plea agreement, and mindful of Benner's offense conduct, his history and characteristics, and the need to protect the public from further crimes committed by Benner, the government requests that the Court impose a sentence of 121 months in prison, followed by 15 years of supervised release, and order special assessments of $5,100.

## II.     **PROCEDURAL HISTORY**

A federal grand jury returned an indictment charging Benner with a violation of 18 U.S.C. § 2252(a)(2) – distribution of child pornography.  Docket 8, Indictment.  On August 2, 2021, pursuant to a written plea agreement, Defendant pleaded guilty to the sole count in the Indictment.  Docket 44.

Defendant agreed that the facts in the Factual Basis for Plea attached as Exhibit A to the Plea Agreement are accurate. *Id*.

As part of the Plea Agreement, the Government agreed, at the time of sentencing, not to bring additional charges based on Defendant's criminal conduct (*id*. at 6), as outlined in Exhibit A to the Plea Agreement. *Id*. at 14.  The Government also agreed to recommend that Benner be sentenced to the low end of the applicable guideline range as determined by the Court. *Id*. at 6, 9.

### III.   FACTUAL BACKGROUND

#### A.   Initial Investigation

This case arose from an undercover investigation conducted by the Federal Bureau of Investigation ("FBI") on the Kik messenger platform.  Presentence Report ("PSR") ¶ 5.  While investigating a target in Arkansas, FBI agents found that Benner was exchanging images and videos of children engaging in sexually explicit conduct with the Arkansas target. *Id*.   Agents in this district obtained a residential search warrant for the house where Benner was living, and executed that warrant on October 18, 2019.  PSR ¶ 7.  During the interview with the agents on that date, Benner admitted that he had been trading files of child sexual abuse material on his two cell phones, one of which was damaged, and one of which he replaced a couple of months before his arrest.  PSR ¶ 8.  Benner also admitted that agents would find files of child pornography on his phone. *Id*.  Agents arrested Benner on the date the search warrant was executed, and he has remained in custody since that date.  PSR ¶¶ 3, 16.

#### B.   Forensic Analysis

An analysis of Benner's active cell phone located multiple videos and images of child pornography.  Agents also found photographs of a person in a My Little Pony costume at what appeared to be a four-year-old girl's birthday party.  PSR ¶ 10.  Benner's publicly-accessible Facebook profile included a photo of a similar My Little Pony costume with a caption reading, "Rainbow dash is looking to come to your birthday party, and she brings candy and music, and you can feed her / Contact me for quotes / She will travel anywhere in Sacramento County."  PSR ¶ 6.  During Benner's interview, he said that he and his friends were planning to start a birthday party business, and he was going to wear the Rainbow Dash costume, but they had not secured any customers at the time of his arrest.  PSR ¶ 10.

One of the videos that Benner stored on his phone showed the sexual abuse of an infant girl.

PSR ¶ 12.  Agents also discovered Kik chats in which Benner sent and received visual depictions of child sexual abuse material.  PSR at 13-15.

### IV.        SENTENCING GUIDELINES CALCULATION

#### A.        Sentencing Guidelines Calculations

Defendant pled guilty to Count 1, a violation of 18 U.S.C. § 2252(a)(2) Distribution of Child Pornography.  Page 9 of the Plea Agreement contains the parties' stipulations as to the applicable calculations under the Sentencing Guidelines.  Docket 44.  The government intends to abide by the offense level stipulations contained in the Plea Agreement, recognizing that the Presentence Report contains different offense level calculations.  According to the stipulations in the Plea Agreement, the base offense level is 22 (U.S.S.G. § 2G2.2(a)(2)).  The parties further agreed to several specific offense characteristics, reflecting pre-pubescent minor (+2 levels, § 2G2.2(b)(2)), knowing distribution (+2 levels, § 2G2.2(b)(3)(F)), sadistic conduct / abuse of an infant or toddler (+4 levels, § 2G2.2(b)(4)), use of a computer (+2 levels, § 2G2.2(b)(6)), and over 150 images (+3 levels, § 2G2.2(b)(7)(B)).  After a three-level reduction under U.S.S.G. §3E1.1[1], the total adjusted offense level is 32.  These calculations are undisputed by the parties, although the Probation Office's calculations are higher.  PSR ¶¶ 26-40. The government does not intend to present evidence to support the higher Guidelines calculations, because that would constitute a breach of the Plea Agreement.

#### B.        Criminal History / Prior Convictions

The Government agrees with the Probation Department's criminal history computations.  PSR ¶¶ 46-48.  Benner's criminal history category is I, with 0 criminal history points.  However, Benner does have a prior conviction for oral copulation with a person under 18, when he was 19 years old[2].  PSR ¶ 45.  Information from the Sacramento County Probation Department about that conviction is summarized in paragraph 45 of the PSR.

---

[1] In this case, Benner accepted responsibility from a very early stage, starting with the interview while agents were searching his residence, and he continued to accept responsibility through the Plea Agreement and its factual basis summarizing his criminal conduct.

[2] This conviction was later reduced to a misdemeanor, and Benner was sentenced to probation, with a short jail term.

## V.   ANALYSIS OF SENTENCING FACTORS UNDER 18 U.S.C. § 3553(A)

### A.   The Nature and Circumstances of the Instant Offense Involve Trafficking in Child Sexual Abuse Materials, Causing Further Harm to the Victims Portrayed

This criminal offense involved Defendant sending and receiving files depicting terrible sexual abuse of young children using the internet and social media applications.  The Victim Impact Statements submitted for this case describe the devastating and continuing impact this trafficking crime has on the victims whose abuse is portrayed in the files.  One victim wrote, "Now I have to suffer twice; the first time was being abused and the second time is the ongoing anxiety due to the images of my abuse forever accessible. . . .  These images will live on the internet longer than I will live."  Another victim wrote, "Every time someone views this trash, he is once again making me re-live the most horrific part of my childhood.  I can never truly heal because the perpetrators and stalkers never allow me to do so."  The Victim Impact Statements describe the ongoing trauma and stalking that some of the victims have suffered as a result of crimes like the ones Defendant committed.

### B.   The Recommended Sentence Also Reflects the Seriousness of the Offense, Promotes Respect for the Law, and Provides Just Punishment for the Offense

When imposing a sentence, courts must consider the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offenses.  As noted above, the offense of distributing visual depictions of very young children being sexually abused is very serious and contributes to ongoing harm for the victims.  The recommended sentence of 121 months in prison should promote respect for the law, provide just punishment for the offense, and achieve the factors set forth in 18 U.S.C. § 3553(a)(2)(A).

### C.   Defendant's History and Characteristics Further Warrant a Significant Sentence

Despite having been convicted of a prior offense with a minor victim, Benner still engaged in trafficking of images and videos depicting the sexual abuse of children.  As discussed above, Benner's history includes a sexual crime with a minor victim described in PSR ¶ 45.  Although he has experienced bouts of homelessness and was living in a communal environment where he cannot return, (nor can he live with his father), Benner's repeated conduct is disturbing, PSR ¶ 55, and his prior psychological evaluation submitted at the time of his sentencing for his 2006 sexual offense against a

1  minor conviction improperly concluded that he, "was at low risk for a [future] sexual offense . . . ." PSR

2  ¶ 74.  As evidenced by the facts of this case, that conclusion proved wrong.  A much more recent 2021

3  neuropsychological evaluation, which will be submitted by defense counsel to the Court under seal,

4  analyzes the defendant's neurocognitive defects, and summarizes evaluations from the defendant's

5  childhood.

6       **D.      A 121-Month Sentence Will Also Deter Criminal Conduct and Protect the Public**

7  **from Future Crimes by Defendant**

8       In addition to the factors already analyzed, the government's recommended sentence will

9  provide specific and general deterrence to further criminal conduct.  Benner's prior case involving

10  sexual offenses against a minor (albeit when he was 19 years old) involved five years of probation and

11  180 days in jail, which did not deter him from his 2019 crimes against children.  The recommended

12  sentence of 121 months, with Bureau of Prisons programming directed at sexual offenders, should

13  hopefully help specifically deter Benner.

14       In terms of general deterrence, a significant sentence of 121 months will also deter others from

15  using social media tools to traffic in visual depictions of child sexual abuse.

16       **E.      Providing Restitution to Victims of the Offenses**

17       Defendant's Plea Agreement provides that he will pay restitution to the victims of his crimes

18  between $3,000 and $5,000 for each victim who submits a sufficient restitution claim in this case.

19  Docket 44 at 3.  In this case, one victim (unrepresented by counsel) submitted a restitution request,

20  incorporated into a Victim Impact Statement.  In this case, the government cannot establish loss for that

21  victim's restitution claim with sufficient detail to form the basis of a judgment under the procedures set

22  out in 18 U.S.C. § 3664.  Undersigned counsel tried twice to contact that victim's representative in the

23  weeks leading up to sentencing, to request additional restitution information, but was unable to reach

24  that person.

25  **VI.      JUSTICE FOR VICTIMS OF TRAFFICKING ACT (JVTA) ASSESSMENT**

26       Although the defendant does not currently have appreciable wealth or assets, for the purpose of

27  imposing the Justice for Victims of Trafficking Act mandatory special assessment (18 U.S.C. § 3014),

28  he is not indigent, because he is capable of earning money while in prison and after release.  For

example, in *United States v. Shepherd*, 922 F.3d 753 (6th Cir. 2019), the Sixth Circuit collected cases from other circuits, establishing that: (1) receiving court-appointed counsel does not equate to indigency; and (2) courts can consider future earnings in assessing indigency. *Id*. at 757-59. The *Shepard* court also held that the district court did not err in finding a defendant non-indigent despite his limited earning potential, negative net worth of $1,739, and $55,000 in restitution and child support obligations. *Id*. at 756, 760. Other published cases evaluating the applicability of the $5,000 special assessment hold that it is appropriate to apply the special assessment where a defendant fails to meet his burden to show that he cannot pay that amount in the future. *See United States v. Graves*, 908 F.3d 137, 142 (5th Cir. 2018); *United States v. Kelley*, 861 F.3d 790, 801 (8th Cir. 2017). An able-bodied person can pay down $5,000 in installments over a period of years. *See United States v. Strange*, 692 F. App'x 346, 349 (9th Cir. 2017) (unpublished).

Defendant will be able to earn money while in the custody of the Bureau of Prisons. Defendants sentenced to federal custody are generally required to work if medically able. *See* https://www.bop.gov/inmates/custody_and_care/work_programs.jsp; https://www.bop.gov/inmates/custody_and_care/unicor_about.jsp. Federal inmates are estimated to earn between $10 and $25 per month. *See id.*; https://www.prisonerresource.com/work-assignment/inmate-work-assignments-federal-prison/. Here, Defendant has not presented any evidence that he is unable to earn money while incarcerated. He is in good health with no known current physical disabilities. *See* PSR ¶ 54. Thus, if sentenced to the 121-month prison term recommended by the United States, Defendant should be able to pay a significant amount of the $5,000 even before he is released from prison. *See United States v. Haggard*, 41 F.3d 1320, 1329 (9th Cir. 1994) (upholding a fine where defendant made no showing of future inability to pay and could earn money while incarcerated).

Defendant will remain capable of earning money after his release from custody as well. Although Defendant will likely be unable to work in certain fields due to the nature of his conviction, Defendant has worked as a cashier, a custodian, and an animal caretaker (PSR ¶¶ 82-84), has training as a prep cook, obtained a forklift operator license (PSR ¶ 81), and will have access to vocational training through the Bureau of Prisons. *See* https://www.bop.gov/resources/news/20140613_program.jsp.

Because Defendant has not met his burden to show that he will be unable to pay the $5,000

1   Justice for Victims of Trafficking Act special assessment, the United States requests that the Court

2   impose the special assessment.

3                              **VII.**      **CONCLUSION**

4            For all of the foregoing reasons, the government asks the Court to impose the recommended 121-

5   month prison sentence, to be followed by 15 years of supervised release, with the conditions

6   recommended by the United States Probation Officer, including registration as a sex offender under

7   California law, and a $5,100 special assessment (incorporating the mandatory assessments under 18

8   U.S.C. §§ 3013 and 3014).

9    Dated:  November 8, 2021                          PHILLIP A. TALBERT
                                                       Acting United States Attorney
10

11                                              By:   /s/ CHRISTINA McCALL
                                                      CHRISTINA McCALL
12                                                    Assistant United States Attorney

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28